■ In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Petitioner, v FRANKLIN E. WHITE, as Commissioner of Transportation of the State of New York, et al., Respondents. (And Another Related Proceeding.)—Mikoll, J. Proceedings pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Transportation which granted respondent Queens Van Plan, Inc., a certificate of public convenience and necessity to operate as a van service common carrier of passengers by motor vehicle.

Respondent Queens Van Plan, Inc. (hereinafter QVP) applied to respondent Department of Transportation (hereinafter DOT) for a certificate to operate a van service common carrier of passengers by motor vehicle. QVP sought to transport

residents of Laurelton, Queens County, from their homes and other designated points to a subway station in Jamaica, Queens County. Passengers would be transported in vans capable of carrying approximately 14 people. Several witnesses testified for and against QVP's application at administrative hearings. Petitioners in these two proceedings, the City of New York and the New York City Transit Authority, were protestants at the hearings.

Following the initial hearing, an Administrative Law Judge (hereinafter ALJ) ruled that QVP's operations could be divided into two distinct components and recommended that QVP receive temporary authority to operate only between passengers' homes and the subway station, since DOT has no jurisdiction over a bus service maintained entirely within the boundaries of a city (Transportation Law § 80 [4]). The ALJ believed that such a limitation would clearly place QVP in the position of a van service. Petitioners' request for a copy of the ALJ's report before it was reviewed by respondent DOT Director Edward J. Canty was denied.

Subsequently, another hearing was conducted to determine whether QVP should receive permanent authority to operate a van service. Following this hearing, the ALJ again recommended QVP's operations be limited to picking up and discharging passengers at their homes and not on designated street routes. As before, petitioners' request for copies of the ALJ's recommendation was denied. Thereafter, Canty rejected the ALJ's recommendation and concluded that the limitation barring street pickups was not necessary and that QVP could pick up and discharge passengers on designated street routes without losing its van service status. Petitioners commenced these proceedings pursuant to CPLR article 78, contending that QVP is in effect operating a bus service which is not within the jurisdiction of DOT and that petitioners should have received copies of the requested ALJ reports. Supreme Court transferred the proceedings to this court pursuant to CPLR 7804 (g).

We find that the determination should be confirmed and the petitions dismissed. The record contains substantial evidence to support Canty's determination that QVP can operate as a van service. Petitioners' contention that QVP cannot be properly classified as a van service since a portion of its service is not on a prearranged basis is rejected. Transportation Law § 2 (35) states that a van service "provides service on a prearranged regular daily basis * * * [and] is usually characterized by the use of vehicles having a seating capacity of twenty

passengers or less". Transportation Law § 2 (3) states that a bus line "is usually characterized by the use of vehicles having a seating capacity of greater than twenty passengers; by multiple pickup and discharge points along designated routes; and by no prearrangements or reservations by passengers". QVP does in fact have characteristics of a bus service as well as a van service. It provides service on a prearranged basis in vans of less than 20 people. It also picks up and discharges people on designated street routes. Thus, it is a hybrid operation. However, Transportation Law § 2 (35) does not preclude a finding that a van service can provide additional services apart from prearranged service *(see, Matter of New York City Tr. Auth. v Pierrot,* 144 AD2d 814 [decided herewith]). Accordingly, Canty's interpretation of Transportation Law § 2 (35) to include service which is not totally prearranged is rational *(see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Elmsford Transp. Corp. v Schuler,* 63 AD2d 1036). Since petitioners had not adopted any regulations concerning the authorization of van service within New York City *(see, Matter of Toniann's Limousine Serv. v New York State Dept. of Transp.,* 132 AD2d 86, 87), DOT had jurisdiction over QVP's application.

We reject petitioners' further argument that because of DOT's prior administrative decisions classifying "shuttle" service carriers lacking prearrangements as bus lines and not van lines, the determination herein departs from prior decisions and is therefore arbitrary and capricious. Those cases are factually distinguishable from the instant case. The cases of *Matter of Martin (Troy Publ. Co.—Roberts)* (70 NY2d 679) and *Matter of Field Delivery Serv. (Roberts)* (66 NY2d 516) are not controlling here. Also without merit is petitioners' contention that the determination that QVP has met the requirements of Transportation Law § 155 (1) is not supported by substantial evidence.

Transportation Law § 155 (1) (a) provides that an applicant for a permit to operate as a carrier of passengers must be "fit, willing and able to provide the transportation to be authorized by the permit". Transportation Law § 155 (1) (b) provides that the proposed service must be consistent with the public interest and the policy enunciated in Transportation Law § 137. Respondents have established that the drivers for QVP have been investigated and that the safety of the public will not suffer because of unfit drivers. The finding that QVP is fit and able to provide van service is thus supported by substantial evidence. There is also substantial evidence for the finding

that QVP's van service is in the public interest. Over 2,000 passengers use the QVP van service daily. The door-to-door service is particularly beneficial to older passengers and those traveling late at night. Further, QVP's operations are consonant with the transportation policy set forth in Transportation Law § 137.

Petitioners' final argument, that the denials of their requests for copies of the ALJ findings that would be submitted for final action before Canty violated due process, is not persuasive. Petitioners' reliance on *Matter of Sorrentino v State Liq. Auth.* (10 NY2d 143, 146), which involved the revocation of a liquor license, is misplaced. The holding of *Sorrentino*, that the licensee was entitled to copies of the Hearing Officer's report prior to final review by the State Liquor Authority *(supra,* at 149), is not a broad-based ruling applicable to all administrative proceedings *(supra,* at 149-150; *see, Matter of Federated Conservationists v Reid,* 84 Misc 2d 951, 954). Unlike *Sorrentino,* the instant proceedings do not involve revocation of a license. Accordingly, the due process considerations are not as demanding *(see, Mathews v Eldridge,* 424 US 319). Significantly, we find no case where *Sorrentino* has been applied to a proceeding before DOT.

Determination confirmed, and petitions dismissed, without costs. Mahoney, P. J., Casey, Weiss, Mikoll and Harvey, JJ., concur.